IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**DONALD GOODRICH,**

    Plaintiff,

    v.

**CITY OF MARION, OHIO, et al.,**

    Defendants.

CASE NO. 3:23 CV 2201

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

Currently pending before the Court is Defendants City of Marion, EMT Austin Ray, EMT Nicholas Kalb, Fire Chief Chuck Deem, and Public Safety Director Randy Caryer's Motion for Summary Judgment. (Doc. 45). Plaintiff Donald Goodrich, administrator for the estate of Joshua Goodrich (hereinafter "the Estate"), opposes (Doc. 48), and Defendants reply (Doc. 50).[1] Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367. For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's Fourteenth Amendment claim, and declines to exercise supplemental jurisdiction over the state law claims and remands those claims to the Marion County Court of Common Pleas.

---

1. The Court also granted the Estate's motion for leave to respond to Defendants' Federal Civil Rule 56(c) objection and the Estate filed that response (Doc. 54).

## BACKGROUND

This case arises from indisputably tragic facts. Shortly after midnight on October 22, 2022, Joshua Goodrich shot himself in the head. The present suit involves claims regarding the actions taken by City of Marion officials in response.[2]

City of Marion EMTs Ray and Kalb were dispatched at 12:08 a.m. on October 22, 2022, to 561 N. State Street for a possible suicide attempt; they arrived four minutes later. (Ray Aff., Doc. 45-1, at 1). After police cleared the scene, Ray entered and located Goodrich, who was slumped over a speaker box with a gunshot wound to the head. *Id.* Ray attests that based on his observations of Goodrich's condition, he believed that condition was incompatible with life and Goodrich should be declared deceased. *Id.* at 2. Ray states Goodrich presented "agonal breathing," but that based on his education, training, and experience, agonal breathing was a sign death was near, though the exact timing remained unpredictable. *Id.* Ray understood this breathing to be a natural part of dying. *Id.* Ray did not begin resuscitative efforts on Goodrich. Ray relayed his rapid trauma assessment to Dr. Brandon Forbes at the Marion General Hospital Emergency Department at approximately 12:19 a.m.; Forbes agreed resuscitative efforts were not needed and Goodrich should be declared deceased. *Id.* Ray declared Goodrich deceased shortly thereafter and called the coroner. *Id.* at 3. Kalb did not participate in the initial assessment of Goodrich and at this point had not yet entered the house. *Id.*

---

2. The Court, summarizes only the evidence necessary to resolve the present motion although both parties cite additional evidence in their briefs. Further, the Court pauses at the outset to address Defendants' Rule 56(c) objection and Plaintiff's response. Upon review, the Court determines that although it would likely find Plaintiff has demonstrated the objected-to evidence could be presented in admissible form, none of the objected-to exhibits are necessary to (or would change) the Court's resolution of the Fourteenth Amendment issue addressed herein. As such, the Court need not definitively resolve the Rule 56(c) objection.

Coroner Assistant April Short arrived at approximately 12:56 a.m., but concluded she could not transport Goodrich because he was breathing. *Id.* Kalb and Ray then transported Goodrich to Marion General Hospital. *Id.* at 9-12 (Marion Fire Department Patient Care Record).

Much of the above is also depicted in an excerpted video submitted by the Estate compiled from police body camera footage.

Goodrich was ultimately declared dead at Marion General Hospital at 3:44 a.m. on October 12, 2022, following resuscitative efforts. *Id.* at 14 (Lucas County Coroner's Report). The Coroner's Report identified Goodrich's cause of death as "gunshot wound of the head (minutes)." *Id.* at 15 (capitalization altered).

In the Amended Complaint, the Estate brings a Fourteenth Amendment Substantive Due Process claim pursuant to 42 U.S.C. § 1983 against Defendants City of Marion, Ray, and Kalb (Claim Ten). (Doc. 16, at 24-26).[3] This claim also references Defendants Deem (the Marion Fire and EMS Chief) and Caryer (Marion Director of Public Safety). *Id.* at 25. The Estate further brings claims for wrongful death and survival, and negligence under Ohio law (Claims One, Two, Three, and Four). *Id.* at 12-18. Other than the Fourteenth Amendment Substantive Due Process claim, all of Plaintiff's claims are based in state law.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine

---

3. The Estate originally sued additional Defendants, but the moving Defendants are the only remaining Defendants in this case.

3

the truth of any factual matter in dispute; the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

## DISCUSSION

Defendants contend they are entitled to qualified immunity and summary judgment on the Estate's Fourteenth Amendment Substantive Due Process claim. They similarly assert they are immune from liability on the Estate's Ohio law wrongful death and negligence claims, and that those claims fail on the merits because the Estate cannot establish proximate causation. For the reasons set forth below, the Court finds all Defendants are entitled to summary judgment on the Fourteenth Amendment claim. It further declines to exercise supplemental jurisdiction over the Estate's state law claims, and remands those claims to state court.

Fourteenth Amendment Substantive Due Process

The Estate brings its § 1983 claim under the Fourteenth Amendment's Due Process Clause. *See* Doc. 16, at 23-26. This Clause provides "[n]o state shall deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV.

Section 1983 makes liable "[e]very person" who "under color of" state law "subjects, or causes to be subjected," another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "[A] § 1983 plaintiff generally must prove both that a defendant was *personally* at fault and that the defendant's culpable conduct (not somebody else's) *caused* the injury." *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 490 (6th Cir. 2020); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] plaintiff must [show] that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Generally, there is no constitutional right to adequate medical care for individuals who are not in the custody of the state. *See Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005). More precisely: "It is not a constitutional violation for a state actor to render incompetent medical assistance or fail to rescue those in need." *Id.* (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)).

The state-created danger theory provides an exception to the above general principle. A constitutional claim may be maintained "where a state actor's affirmative act either creates or increases a risk that the decedent would be exposed to private acts of violence, or cuts off private sources of rescue without providing an adequate alternative." *Linden v. City of Southfield*, 75 F.4th 597, 602 (6th Cir. 2023) (citation modified). "To state a constitutional claim on this theory, [the Estate] must allege: (1) an affirmative act by the [Defendants] that created or increased a risk that [Goodrich] would be exposed to private acts of violence, (2) a special danger to [Goodrich] such that the [Defendants'] acts placed [Goodrich] specifically at risk, as distinguished from a risk that affects the public at large, and (3) that the [Defendants] acted with

5

the requisite culpability to establish a substantive due process violation." *Id.* at 602-03 (citation modified).

Finally, Defendants claim entitlement to qualified immunity. Qualified immunity "shields governmental officials from monetary damages as long as 'their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 480 (6th Cir. 2017) (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). The Court may address in either order whether a constitutional violation occurred and whether the right at issue was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236, (2009). The "inquiry" as to whether officials' conduct violated "clearly established" law "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Clemente v. Vaslo*, 679 F.3d 482, 490 (6th Cir. 2012) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). Although "a case directly on point" is not necessary to overcome qualified immunity, "existing precedent must have placed the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Unlike other affirmative defenses, a plaintiff bears the burden to overcome qualified immunity. *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021).

*Individual Capacity Claims*

In opposing Defendants' motion, the Estate relies on the state-created danger theory. *See* Doc. 48, at 2, 12. Defendants contend they are entitled to qualified immunity on the Estate's substantive due process claim because the Estate has not established any Defendant engaged in any affirmative act – the first prong of a state-created danger claim – rather than a mere failure to act. The Court finds Defendants are entitled to qualified immunity as they have established there

is no question of material fact regarding whether they committed a constitutional violation, much less a clearly established one.

"[A] failure to act cannot be considered an affirmative act under the state-created danger theory." *Willis v. Charter Twp. of Emmett*, 360 F. App'x 596, 601 (6th Cir. 2010) (collecting cases); *see also Weeks v. Portage Cnty. Exec. Offs.*, 235 F.3d 275, 279 (6th Cir. 2000) (failing to call an ambulance for a man bleeding from a gash on his forehead and instead ordering him to leave the scene of a traffic stop was not an affirmative act).

Again, "[i]t is not a constitutional violation for a state actor to render incompetent medical assistance or fail to rescue those in need." *Jackson* 429 F.3d at 590. And the Sixth Circuit has repeatedly found allegedly inadequate or incompetent medical treatment by first responders does not meet the first prong of a substantive due process violation based on a state-created danger theory. *See Linden*, 75 F.4th at 603 (finding no clearly established constitutional violation where first responders mistakenly determined an individual to be deceased and she was placed in a body bag for transport to funeral home); *Jackson*, 429 F.3d at 591-92 (finding no constitutional violation where a gunshot victim was placed in an ambulance but received no treatment); *Willis*, 360 F. App'x at 601 (finding no constitutional violation in first responders' failure "to discover that [the traffic accident victim] was still alive and thus did not provide him with the medical care he needed" because even if this were an affirmative act, they "did not make [the victim] less safe by increasing the risk that he would be exposed to private acts of violence"); *Carver v. City of Cincinnati*, 474 F.3d 283, 285 (6th Cir. 2007) (finding first element of state-created danger exception not satisfied where officers left an individual unconscious in an

7

apartment and he was later discovered to have died of a drug overdose). In each of these cases, the Sixth Circuit found the first responders entitled to qualified immunity.[4]

Although the Estate attempts to frame Ray's declaration of Goodrich as deceased and failure to take different steps as "affirmative acts," the Court disagrees.[5] The Estate's argument is actually a claim that Ray should have made different medical decisions. It argues "EMT Ray took affirmative conduct to deny Mr. Goodrich medical care." (Doc. 48, at 3). The Estate's argument, which is in part grounded in written policies it contends were violated, illustrates this point. *See, e.g.*, Doc. 48, at 3 ("EMT Ray *Disregards* Written Policies.") (emphasis added); Doc. 48, at 5 ("EMT Ray and EMT Kalb *Skipped* Life Saving Care.") (emphasis added). But stated differently, the "affirmative act" the Estate argues is simply the failure to act in a different manner.

Moreover, even if Ray or Kalb's actions could somehow be characterized as an affirmative act (rather than a failure to act), the Estate does not explain how such an act "created or increased a risk" that Goodrich "would be exposed to private acts of violence," or "cut off private sources of rescue." *Linden*, 75 F.4th at 602, 604 (citation modified); *see Peete v. Metro. Gov't of Nashville & Davidson Cnty.*, 486 F.3d 217, 223 (6th Cir. 2007) (explaining the state-created danger theory is unavailable where the state actors' incompetent medical care did not expose decedent to private act of violence); *Jackson*, 429 F.3d at 591-92 (remanding to district court with instructions to grant motion to dismiss based on qualified immunity where EMTs did not "cut[] off" private sources of rescue by putting decedent into an ambulance because "EMTs

---

4. In three of these cases, the Court expressly found no constitutional violation. *See Carver*, 474 F.3d at 287; *Jackson*, 429 F.3d at 591-92; *Willis*, 360 F. App'x at 601-02. In *Linden*, the Court found the first responders entitled to qualified immunity, without deciding the constitutional violation question. 75 F.4th at 605.
5. The Estate's arguments centers on Ray's actions or inactions with brief mentions of Kalb. As such, the Court's analysis does as well.

8

did not discourage others from entering the ambulance" and " there [was] no evidence that any private rescue was available or attempted" and "[n]o set of facts consistent with the allegations shows that the EMTs interfered with private aid"); *Carver*, 474 F.3d at 287 ("In the absence of any allegation that a private rescue was attempted, the officers did not commit a constitutional violation by securing the apartment and leaving [the deceased] lying on the couch."). Instead, the Estate focuses on actions Ray did not take (but it believes he should have). None of this speaks to cutting off any attempts at private rescue or rendering Goodrich more vulnerable to private acts of violence. The Court finds the Estate has failed to establish Ray or Kalb committed a constitutional violation.[6]

Even if the Estate could establish a constitutional violation, Defendants would still be entitled to qualified immunity. *Linden*, *Willis*, *Carver*, and *Jackson* are cited in Defendants' Motion for Summary Judgment and assertion of qualified immunity. *See* Doc. 45, at 13 ("*Jackson*, *Carver*, *Willis*, and *Linden* stand for the proposition that Goodrich had no constitutional right to medical treatment."). *Linden* and *Willis* in particular involved substantially analogous facts. In both, first responders allegedly mistakenly declared or believed an individual to be deceased and in both, the courts found either no constitutional violation or no clearly established constitutional violation because the first responders' actions did not amount to affirmative action that exposed the victim to private acts of violence.

---

6. The same is true for Deem and Caryer, to the extent claims are asserted against them in their individual capacities. The Estate points to no evidence either individual was personally involved at the scene. And in its opposition brief, the Estate only argues that, because it can establish an individual capacity claim against Ray and Kalb, it "seeks to maintain its claims against them and Fire Chief Chuck Deem and Safety Director Randy Caryer in their individual and official capacities." (Doc. 48, at 11). Because no violation of a constitutional right occurred, the Estate has not established a substantive due process claim against any Defendant in their individual capacity.

The Estate's opposition brief makes no attempt to engage with or distinguish this caselaw nor does it point to clearly established "existing precedent" that places the constitutional question at issue "beyond debate." *Al-Kidd*, 563 U.S. at 741. Instead, the Estate relies on its own characterization of the EMS Protocols and whether or not Ray complied therewith and cites to broader principles of substantive due process. *See* Doc. 48, at 11 (contending Ray's actions "shock[] the conscience" and noting that "[i]n an obvious case, general standards can clearly establish the answer, even without a body of relevant case law") (quoting *Flying Dog Brewery LLP v. Mich. Liquor Control Comm'n*, 597 F. App'x 342, 353 (6th Cir. 2015)). But simply stating something "shocks the conscience" does not satisfy the Estate's burden to show there was a clearly established right in these particular factual circumstances. *See Bell v. City of Southfield*, 37 F.4th 362, 368 (6th Cir. 2022) ("For a right to be clearly established, 'existing *precedent* must have placed the statutory or constitutional question beyond debate.'") (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021)); *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (explaining a "clearly established right," for the purpose of determining whether a public official is entitled to qualified immunity, "is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'") (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The Estate's citation of *Flying Dog Brewery*, a case involving a Michigan Liquor Control Commission beer-labeling rule, fares no better, as it bears no relation to the facts of the instant case.[7]

---

7. The Estate's opposition brief contains a lengthy discussion of the Marion County EMS protocols and lays out how Ray is alleged to have violated them in his assessment of Goodrich. But these arguments speak to negligence, not to a substantive due process violation. *See, e.g.*, *Griffith v. Franklin Cnty.*, 975 F.3d 554, 582 (6th Cir. 2020) ("[T]he violation of an internal policy does not establish a constitutional violation.") (first citing *Winkler v. Madison Cnty.*, 893 F.3d 877, 891-92 (6th Cir. 2018); and then citing *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992)).

10

The Court finds the Estate has not satisfied its burden to overcome the individual Defendants' assertion of qualified immunity as to the substantive due process claim. *See Crawford*, 15 F.4th at 760; *Bell*, 37 F.4th at 367-68 ("The plaintiff bears the burden of showing that the right was clearly established" and, to meet such a burden, "must provide on-point caselaw that would bind a panel of [the Sixth Circuit]"); *Campbell v. Hines*, 2013 WL 7899224, at *4 (6th Cir.) ("[T]he district court properly declined to address the merits of Campbell's equal protection claim, because he failed to respond to the defendants' argument that they were entitled to qualified immunity.").

While a case such as the instant one may provide "a strong claim on our sympathies," "'[t]he Supreme Court has repeatedly declared its unwillingness to 'make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *Lewellen v. Metro. Gov't of Nashville & Davidson Cnty.*, 34 F.3d 345, 351 (6th Cir. 1994) (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)).

*Official Capacity* / Monell *Claims*

Defendants also move for summary judgment on the Estate's official capacity / *Monell* claims.

The Estate brings claims against Ray, Kalb, Deem, and Caryer in their official capacities. *See* Doc. 16, at 5-6. And the Estate further asserts its constitutional claim against the City of Marion. *Id.* at 23-26. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, that is the City of Marion. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Thus, all of these claims collectively assert a *Monell* claim that a policy or custom of the City violated Goodrich's substantive due process rights.

11

To state a claim against a municipality pursuant to § 1983, a plaintiff must show his constitutional rights were violated and that the municipality had a "policy or custom" that caused the violation. *Wright v. City of Euclid*, 962 F.3d 852, 879-80 (6th Cir. 2020). The policy or custom can be "an illegal official policy or legislative enactment," ratification of "illegal actions" by "an official with final decision making authority," a "policy of inadequate training or supervision," or "a custom of tolerance or acquiescence of federal rights violations." *Id.* (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019)). A municipality may not be held liable under § 1983 on a *respondeat superior* theory—in other words, "'*solely* because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Instead, a plaintiff must show that the municipality's conduct "was the moving force behind violations of [an individual's] constitutional rights." *Wright*, 962 F.3d at 881.

The Estate here asserts the City of Marion's custom is to treat individuals contrary to its written guidelines, EMT Ray was not properly trained, and that Ray's actions were ratified after the fact. (Doc. 48, at 13-16).

At the outset, the Court observes the Sixth Circuit has expressly held that, although its "precedent has not been a model of consistency on this point," it is nevertheless "proper to consider possible constitutional violations committed by a municipality *qua* municipality, even in the absence of a showing of a constitutional violation by any one individual officer." *Grote v. Kenton Cnty.*, 85 F.4th 397, 414 (6th Cir. 2023). Such a circumstance may occur when, for example, the individual officers are entitled to qualified immunity (and there is no finding regarding a constitutional violation). *See id.* ("[T]he potential for municipal liability notwithstanding an individual's lack of liability has always existed, as in cases when an

individual officer receives qualified immunity."). *Grote* further explained that even beyond qualified immunity, "there are still scenarios when no officer may have acted unconstitutionally, but the municipality has nonetheless inflicted constitutional harm on a victim." *Id.*; *see also Poynter ex rel. Fernandez v. Bennett*, -- F.4th --, 2025 WL 3653631, at *7 (6th Cir.) ("Poynter was not required to establish that a specific individual violated his rights. Instead, he was required to demonstrate only that he suffered a constitutional harm.").

Still, "[i]n many cases, a finding that no individual defendant violated the plaintiff's constitutional rights will also mean that the plaintiff has suffered no constitutional violation." *Poynter*, 2025 WL 3653631, at *7. This is one of those such cases. As there is "no constitutional right to adequate medical care for individuals who are not in the custody of the state," *Linden*, 75 F.4th at 602, and the Estate has failed to establish the state-created danger exception exempts this case from that general rule, the Estate has not demonstrated the infliction of constitutional harm against Goodrich such that the City of Marion, or any Defendant, is liable.

State Law Claims

Remaining are the Estate's state law claims for wrongful death and negligence. *See* Doc. 16, at 12-18.

A district court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Thus, at the time of removal, the Court had jurisdiction over these related state law claims. However, a court may decline to exercise supplemental jurisdiction over a claim under § 1367(a) if it "has dismissed all claims over which it has original jurisdiction." *Id.* at § 1367(c)(3). The Sixth Circuit counsels that "'[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law

13

claims, or remanding them to state court if the action was removed.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)). Indeed, recent Sixth Circuit caselaw "requires district courts to *presume* that they should decline this jurisdiction if they have rejected all the federal claims before trial." *Hehrer v. Cnty. of Clinton*, -- F.4th --, 2025 WL 3564162, at *10 (6th Cir.) (emphasis added). Because the Court has dismissed the only claim over which it had original jurisdiction, and seeing "nothing that would overcome this starting presumption," *id.*, the Court finds it appropriate to decline to exercise supplemental jurisdiction over the remaining state law claims and remand them to state court. A state court is better suited to evaluate these questions of wrongful death and negligence which arise under state law. The Court offers no opinion on the merits of these claims.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants City of Marion, Austin Ray, Nicholas Kalb, Chuck Deem, and Randy Caryer's Motion for Summary Judgment (Doc. 45) be, and the same hereby is, GRANTED as to the Estate's Fourteenth Amendment Substantive Due Process claim; and it is

FURTHER ORDERED that the Court declines to exercise supplemental jurisdiction over the remaining state law claims and those claims be, and the same hereby are, REMANDED to the Marion County Court of Common Pleas.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: January 16, 2026